Case 1:26-cv-01067-AHA   Document 1   Filed 03/30/26   Page 1 of 18

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

S.A., by his parents and next friends,
R.A. and C.A.,

and

R.A. and C. A.,

     Plaintiffs,

     v.

DISTRICT OF COLUMBIA,
A Municipal Corporation,
One Judiciary Square,
441 Fourth Street, NW,
Washington, D.C. 20001,

     Defendant.

**Civil Action No. _____**

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### Preliminary Statement

1.     This is an action brought by R.A. and C.A. ("the parents"), in their own right and on behalf of their son, S.A., alleging that the District of Columbia Public Schools ("DCPS" or "school system"), and the Office of the State Superintendent of Education ("OSSE"), failed to provide S.A. with the free appropriate public education ("FAPE"), to which he is entitled under the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. §§1400 *et seq.* DCPS denied S.A. a FAPE by failing to propose an appropriate educational program and placement for the 2024-2025 and 2025-26 school years. Moreover, the Hearing Officer who heard the administrative Due Process appeal and decided the action compounded these violations when he found that DCPS offered S.A. a FAPE, ignoring clear evidence to the contrary. In so doing, the Hearing Officer excused defendant's failure to adhere to applicable authorities governing

1

special education and the provision of a FAPE by denying the parents their requested relief. Because of any of these errors, the Court should reverse the Hearing Officer's Decision in part and award the parents full reimbursement for S.A.'s placement at the Lab School of Washington ("Lab" or "Lab School"), for the 2024-2025 and 2025-2026 school years.

### Jurisdiction

2.      This Court has jurisdiction pursuant to the IDEA, 20 U.S.C. §§ 1400 *et seq*., and 28 U.S.C. §§ 1331 and 1343.  Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

3.      Plaintiffs have exhausted their administrative remedies and seek to reverse the Decision of a Hearing Officer in the Office of Dispute Resolution of the Office of the State Superintendent of Education, Case Number 2025-0172 (January 12, 2026).

### Parties

4.      S.A. is an eleven-year-old, educationally disabled student who at all times relevant to this action resided in the District of Columbia.  His parents bring this action on S.A.'s behalf and in their own right.

5.      The District of Columbia is a municipal corporation receiving federal funds under the IDEA.  20 U.S.C. §§ 1400 *et seq*.  DCPS is a local educational agency as defined by 20 U.S.C. § 1401, and as a part of the District of Columbia, receives financial assistance from the United States Department of Education.  DCPS is responsible for complying with federal law with respect to the provision of a FAPE to each educationally disabled student in the District of Columbia.  OSSE is the state education agency for the District of Columbia, and as such is responsible for complying with federal law with respect to each educationally disabled student in the District of Columbia.

### Factual Allegations

6.      S.A. is an eleven-year-old student attending the Lab School of Washington.

7.      S.A. has been diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD"), an Anxiety Disorder, and Specific Learning Disabilities in reading and written expression.

8.      S.A. has been found eligible for special education services by the District of Columbia Public Schools ("DCPS" or "school system"), as a student with Multiple Disabilities, including a Specific Learning Disability ("SLD"), and an Other Health Impairment ("OHI").

9.      S.A. attended Janney Elementary School ("Janney"), his local DCPS school, from pre-kindergarten through second grade.

10.     In January and February of 2021, DCPS conducted a psychological evaluation of S.A.  On the Wechsler Intelligence Scale for Children, Fifth Edition ("WISC-V"), his Full-Scale IQ fell in the Very High range.  His Verbal Comprehension was also in the Very High range, while his scores on Working Memory, Visual Spatial, Fluid Reasoning, and Processing Speed all fell in the Average range.

11.     On the Weschler Individual Achievement Test, Fourth Edition ("WIAT-4"), S.A. performed in the Below Average range in Reading and Written Expression.  His Mathematics and Listening Comprehension scores fell in the Average range.  In Oral expression, his overall performance was in the Average range, but he scored in the Below Average range in the area of Oral Word Fluency.

12.     To assess S.A.'s attention and executive function, the DCPS evaluator administered the Conners- 3rd Edition and the Behavior Rating Inventory of Executive Function,

Second Edition ("BRIEF-2").  The results revealed weaknesses in several areas of executive functioning.

13.    The DCPS psychologist found that S.A. had highly diverse cognitive abilities, noting that S.A.'s academic profile was consistent with Mixed Dyslexia, a subtype of dyslexia that results in difficulty across the language spectrum, and that his behavior profile was consistent with ADHD, Predominantly Hyperactive-Impulsive Presentation.  The evaluation indicated that S.A. met the criteria for both Specific Learning Disability and Other Health Impairment.  The evaluation also indicated that the classification of Multiple Disabilities should be considered.

14.    On March 1, 2021, DCPS found S.A. eligible for special education services as a student with SLD.

15.    On March 3, 2021, DCPS developed S.A.'s initial IEP, which contained goals and services in the areas of Reading, Written Expression, and Mathematics.  The IEP called for 90 minutes per week of specialized instruction in reading outside of general education, 60 minutes per week of specialized instruction in written expression inside general education, and 30 minutes per week of specialized instruction in math inside general education.

16.    S.A. remained at Janney for the remainder of the 2020-21 school year and despite the IEP services, made only minimal progress.

17.    At the beginning of the 2021-22 school year, the team determined that additional services were needed and the team agreed to collect more data.  Throughout the year, although Janney was providing more support in the general education setting than S.A.'s IEP called for, S.A. continued to struggle.

18.     An addendum was added to the February 2021 psychological evaluation to assess S.A.'s social emotional functioning, which confirmed the parents' concerns. For example, the psychologist reported that there had been a regression in his math and reading DIBELS scores. The school psychologist administered the Children's Manifest Anxiety Scale, Second Edition ("CMAS"), the Reynolds Child Depression Scale ("RCDS"), the Behavior Assessment System for Children ("BASC"), and the Conners Comprehensive Behavior Rating Scale ("CBRS"). On the CBRS, the parents' scores for S.A. were in the elevated range. The parents' responses were also elevated on the scale related to Separation Anxiety Disorder and ADHD. On the RCDS, S.A.'s results fell within normal limits. On the CMAS, his scores indicated fewer issues than most students his age. However, the evaluator also considered his behavior in the classroom such as crying, whining, high levels of distress, and avoidance when faced with challenging academic tasks. S.A.'s teachers reported inattention, and the need for one-on-one support to complete any tasks or assignment. Overall, the evaluation indicated that S.A.'s severe academic challenges seem to drive his anxiety in the general education and special education settings. The evaluation also indicated that he was more likely than others to be emotionally overwhelmed and flooded.

19.     As a result of their continued concerns about S.A.'s placement at Janney, the parents began exploring alternate placement options for him and he was accepted by the Lab School of Washington. The family had numerous conversations about this with Janney staff in the spring of 2022 where they expressed concern over the school's ability to meet S.A.'s needs.

20.     S.A. entered third grade at the Lab School in the fall of 2022 and immediately responded well to the program, but demonstrated that he continued to need the small, highly structured environment there.

21.    In the spring of 2023, the parents began the special education process with the DCPS Child Find office.

22.    In the summer of 2023, DCPS developed an IEP for S.A. proposing 20 hours weekly of specialized instruction inside the general education setting, 180 minutes per month of behavior support services, 120 minutes per month of direct Occupational Therapy services, and 120 minutes per month of Speech and Language Services.  DCPS could not explain how S.A.'s specialized instruction, reading instruction, and related services would be provided. The parents and the parents' consultant expressed their concerns over the proposed services and asked for more services outside of the general education setting, but DCPS refused to increase the proposed services.

23.    Concerned with the appropriateness of the proposed DCPS program, the parents maintained S.A.'s placement at Lab for the 2023-24 school year.

24.    On January 2, 2024, S.A.'s parents filed a hearing request seeking reimbursement for tuition and related expenses incurred for his placement at Lab for the 2022-23 and 2023-2024 school years, as well as placement at Lab School for the remainder of the 2023-24 school year. The parties subsequently reached a settlement and the case was withdrawn on February 16, 2024.

25.    On January 8, 2024, Amy Mounce , the family's special education consultant, observed S.A. in his morning meeting, math class, and music class at Lab for about 1 ½ hours. She noted that across settings, he was required to work in a small group, with a partner, and independently, and demonstrate academic content and social, emotional, and behavioral skills. This was a typical day for S.A., but Ms. Mounce observed many weaknesses including class participation, concern/anxiety over upcoming actions and activities, attention to whole class instruction, calling out, and the need for frequent reminders of rules and expectations.

26.     On June 11, 2024, DCPS convened its annual review of S.A.'s IEP with the parents, Ms. Mounce, and Lab School in attendance.

27.     Audrey Dolginoff, the Director of Jurisdictional Services at Lab, provided an update on S.A.'s last year at Lab at the start of the June 2024 IEP meeting.  She shared that when they had met in August of 2023, S.A. had been spending a lot of time with the social worker and in the nurse's office, but had displayed more maturity and an ability to remain in the class now.  However, Ms. Dolginoff shared that S.A. continued to experience shutdowns when facing something challenging.  His parents reported that his year at Lab had significantly improved; he was making friends and was making progress.

28.     The IEP team updated the present levels of performance and goals in the areas of reading, written expression, speech/language, math, social/emotional and OT.

29.     Upon discussion of service hours, DCPS proposed 20 hours per week of self-contained instruction outside of the general education classroom, as well as 1 hour per week of special education consultation, 180 minutes per month of behavioral support services ("BSS"), 1 hour per month of BSS consultation, and 1 hour per month of OT with 15 minutes per month of OT consultation.  The parents shared their belief that S.A. required a full-time program due to his ongoing needs throughout the entire school day, pointing to his struggle in larger, non-academic times while in the general education classroom within DCPS.  S.A.'s parents also shared their concern about attending three schools within three years and their inability to observe the proposed program due to the end of the school year.  Finally, they requested a referral to the Office of the State Superintendent of Education ("OSSE"), for consideration of a change in placement.  Ms. Mounce shared her concern with S.A. transitioning between classes and settings

throughout the day.  She shared that she had observed S.A. in his music class at Lab and saw

impact, including his interaction with peers and ability to self-regulate.

30.     Despite the parents' request for a referral to OSSE, DCPS sent a Prior Written

Notice on July 15, 2024 placing him in the Specific Learning Supports ("SLS"), classroom at

Murch Elementary School.

31.     On September 11, 2024, S.A.'s parents and Ms. Mounce observed the proposed

program at Murch for about 35 minutes.  They learned that the SLS program was comprised of

about 10 students, five 3rd graders and five 5th graders, which would be inappropriate for S.A. as

he would be attending the same classroom as students two grade levels below him.  Ms. Mounce

and the parents also learned that he would attend lunch, recess, and specials with the 3rd grade

general education population, which was also inappropriate because he would not be among his

peers.  Ms. Mounce concluded that overall, S.A.'s peers in the SLS classroom did not appear to

be similar to S.A. in terms of academic and behavioral functioning and ability, as the students

were treated in a manner well below his chronological and developmental age.

32.     S.A. continued at Lab for the 2024-25 school year where he receives special

education services for all academics with daily small group or 1:1 instruction, in addition to

related services.

33.     On September 17, 2024, DCPS convened an Analysis of Existing Data ("AED"),

meeting with S.A.'s parents, Lab, and Ms. Mounce.

34.     During the AED meeting, S.A.'s parents shared that he was experiencing

significant anxiety surrounding the transition from the lower school to the middle school

program at Lab.  S.A. had a mental health scare and shared thoughts of self-harm with his

parents, who immediately contacted CHAMPS for support.  Lab was also notified and provided a significant amount of support to stabilize him.

35.     After updates were provided at the outset of the AED meeting, DCPS proposed completing a comprehensive psychological evaluation, a comprehensive OT evaluation, a comprehensive speech and language re-evaluation, and a Functional Behavior Assessment 1 ("FBA 1"), in conjunction with a BSS Data Collection.  The parents provided consent for these evaluations.

36.     In the fall of 2024, DCPS completed its evaluations of S.A.

37.     On the DCPS psychological evaluation, S.A.'s results varied significantly from his 2021 evaluation.  His Full Scale IQ score of 84 placed him in the Low Average range, while in 2021 he had scored in the Very High range.  Further, S.A.'s Average scores on the Fluid Reasoning and Processing Speed indices on the 2021 evaluation significantly dropped to the Low Average and Extremely Low ranges, respectively.  Academic achievement testing using the KTEA-3 revealed significant deficits in reading, writing, and math computation skills; therefore, he continued to meet the criteria as a student with an SLD.  The evaluator also administered behavioral and social/emotional rating scales to S.A.'s teacher who indicated elevated concerns in the areas of inattention, hyperactivity, anxiety, depression, and social/academic difficulties.

38.     Delisa Green, a DCPS speech/language pathologist, also completed an assessment of S.A.  She concluded that he demonstrated adequate oral language skills, adequate oral comprehension of language and verbal expression, and adequate hearing and speaking vocabulary.  Ms. Green found that S.A. did not demonstrate a disabling oral communication disorder that would prevent him from accessing or gaining benefit from the general education curriculum.

39.     DCPS also completed an OT evaluation of S.A.  On the Beery-Buktenica Test of Visual Motor Integration ("VMI"), he scored in the Low range on the Motor Coordination subtest due to challenges in the areas of postural control, motor coordination, and manual coordination.

40.     On December 3, 2024, DCPS reconvened to review the evaluations.  S.A.'s parents provided an update on his difficult start to the school year and reported that they had seen significant improvement due to the addition of psychological services at Lab.  He was managing his emotions much better but continued to struggle with reading and writing.

41.     Ms. Green reviewed her evaluation first and shared her conclusion that S.A. did not present as a student with a disabling oral communication disorder, which his parents, Lab, and Ms. Mounce disagreed with, as he was receiving speech/language services at Lab for concerns with higher level language skills.  Lab recommended continued services as S.A. was demonstrating impact in the classroom that did not show up on one-to-one testing.  However, DCPS declined to find him eligible for speech/language services.

42.     Upon review of the psychological evaluation, S.A.'s parents shared their concern with the significant discrepancy between his Full Scale IQ score in 2021 and at present.  They asked why the General Ability Index ("GAI"), was not considered and the evaluator shared she did not use GAI because S.A. had given his "best effort" during testing, despite also reporting that he required several breaks due to a lack of motivation.

43.     The parents requested that DCPS fund an Independent Educational Evaluation ("IEE"), in order to get a clearer picture of S.A.'s needs due to the questions and inconsistencies in the cognitive, academic, and social/emotional testing completed by the DCPS psychologist.

44. Also at the December 3rd meeting, the team considered S.A.'s eligibility as a student with Multiple Disabilities. The team agreed he continued to meet the criteria for an SLD in reading, writing, and math. S.A.'s parents, Ms. Mounce, and Lab suggested that the team consider eligibility as a student with an Other Health Impairment ("OHI"), due to his ADHD. After a lengthy discussion, DCPS agreed to find him eligible for services as a student with Multiple Disabilities, including an SLD and OHI.

45. Following the eligibility meeting, DCPS granted authorization for an IEE.

46. In the spring of 2025, Dr. Melissa Blackwell of NeuroBehavioral Associates completed a Neuropsychological evaluation of S.A.

47. Dr. Blackwell reviewed S.A.'s records from Lab, which indicated he was performing at the 2nd or 3rd grade instructional level in reading, writing, and aspects of math. School records also pointed out his challenges with attention, executive functioning, test performance, social language, listening comprehension, following multi-step directions, and consistent assignment completion. Emotionally, S.A.'s parent and school reports indicated he had low academic confidence and anxiety symptoms, which he tended to express through physical complaints, such as nausea or stomach aches, and engaging in avoidance behavior. He also had strong emotional reactions to anxiety in the form of loud yelling and crying for up to 30 minutes.

48. Dr. Blackwell administered the Differential Ability Scales- II Normative Update ("DAS-II NU"), to evaluate S.A.'s intellectual/cognitive skills and the findings revealed an overall General Conceptual Ability score in the average range, higher than the findings on the WISC-V administered by DCPS.

49.     Dr. Blackwell concluded that S.A.'s learning difficulties were certainly not due any problems with his intelligence.  Further, S.A. had made the expected levels of progress in nonverbal reasoning and visual/spatial skills since the 2021 evaluation, and his above average nonverbal reasoning performance was significantly higher than in 2024.  However, S.A.'s verbal skills fell in the low average range and did not reflect the same level of progress since 2021, when they were in the superior range.

50.     Dr. Blackwell found that S.A.'s strength in above-average nonverbal reasoning skills versus low-average verbal skills is a more common pattern in those with language learning disorders.  She concluded that, "S.A.'s relatively weak verbal skills, in addition to low-average oral comprehension skills (WIAT-4) and school records indicating difficulties with aspects of language (social language, listening comprehension), reflect a need for speech/language services in addition to services for Dyslexia."  Testing also indicated that S.A.'s profile remained consistent with the 2021 finding of Mixed Dyslexia, characterized by a combination of difficulties with decoding and fluency and underlying weaknesses in the phonological and visual aspects of reading.  Dr. Blackwell's findings also supported a Specific Learning Disorder in Written Expression due to impairments in sentence and essay composition and writing fluency skills, as well as continued weaknesses in spelling/encoding skills.

51.     Dr. Blackwell also described that S.A. has co-occurring ADHD and anxiety.

52.     Dr. Blackwell concluded that S.A. requires extensive and intensive special education and related services, support, and modifications.  She recommended a small, highly structured academic setting with a low student-to-teacher ratio throughout the day and educational interventions provided 1:1 or in small groups by appropriately trained educators.

Finally, Dr. Blackwell recommended speech/language services, OT services, and psychological services to increase emotional coping tools for anxiety management.

53. On May 22, 2025, DCPS convened another AED meeting with the parents, Ms. Mounce, and Lab School. Upon review of Dr. Blackwell's evaluation, the DCPS psychologist did not see any measures of attention and requested updated attention rating scales, which the parents agreed to. Ms. Mounce pointed to the fact that S.A. tends to go through cycles and he may look very different in September or October than at present. Lab staff shared S.A.'s continued improvement throughout the school year and DCPS concurred, as they had completed observations of him throughout the year and had seen improvement as well.

54. Upon the completion of the attention rating scale, DCPS reconvened on July 29, 2025 and agreed to continue to find S.A. eligible for services as a student with Multiple Disabilities, including an SLD and OHI. DCPS also completed the Emotional Disability ("ED") worksheet, but determined that while anxiety was present in the classroom, his educational progress was most impacted by his learning disabilities and ADHD, and that ED was not the primary disability classification. DCPS continued to deny eligibility for speech/language services, which the family disagreed with.

55. On August 22, 2025, DCPS convened its final meeting to develop S.A.'s IEP for the 2025-26 school year. The team reviewed and agreed on goals in the areas of reading, math, written language, social/emotional, and OT. Upon discussion of service hours, DCPS continued to propose 20 hours of self-contained instruction for all core academics, two hours per week of special education consultation, 3 hours per week of direct BSS with a one-hour monthly consultation, and 3 hours per week of direct OT with a 30-minute monthly consultation. DCPS stated it would be referring S.A.'s case to the Location of Services team to determine placement.

56.     S.A.'s parents shared their belief that he continued to need a small, full-time program due to his struggles in larger settings.  They pointed to his initial struggles in his transition to middle school, but progress throughout the year with the right supports in place.  S.A.'s parents shared their concern for the potential emotional harm of switching him to a new school with no notice, as well as his ability to function in middle school electives and lunch in the general education setting.  S.A. would also struggle in unstructured settings, specifically in the general education environment.  They again requested that DCPS refer his case to OSSE for nonpublic placement, but their request was denied.

57.     The same day as the IEP meeting, S.A.'s parents received a Prior Written Notice placing him in the SLS classroom at Deal Middle School for the 2025-26 school year.

58.     On September 3, 2025, Ms. Mounce and S.A.'s father observed the proposed program at Deal.  The learned that students from the SLS program were in classes with students in the Behavior and Education Support ("BES"), program, which offers therapeutic programming to students and had not been proposed for S.A.  In the special education classrooms, there were 7-8 students in the two sixth grade classes they observed and 10 students in the combined seventh and eighth grade classes.  Each classroom had a teacher and a behavior tech, who served as both the instructional assistant and behavioral tech, but they learned that one of the behavior tech positions was currently unstaffed.  They observed two separate lessons happening at the same time, which would distract and frustrate S.A.  They also learned that the sixth grade social worker was on maternity leave for the first term.

59.     Ms. Mounce and R.A. learned that there were approximately 525 kids in 6th grade who ate lunch together, followed by recess.  All electives were in general education classes.  Deal staff was unable to share elective class sizes for any classes other than physical education

14

("PE").  Each PE class has about 25-30 students with one teacher; however they learned there can be up to four PE classes in the gym at once.  In the PE class they observed, Ms. Mounce and R.A. observed two classes both having PE, approximately 48 students with 2 adults.

60.    Following the visit, Ms. Mounce and the parents concluded that the proposed program at Deal was not appropriate for S.A.  They felt that the large size of the lunch, recess, and electives would increase S.A.'s anxiety, as well as transitioning in the hallways between classes, which would be required multiple times per day.

61.    The due process hearing was convened in December 2025 and January 2026.

62.    At hearing, the parents presented evidence and testimony from Dr. Blackwell, Ms. Mounce, Ms. Dolginoff, and S.A.'s father.

63.    The Hearing Officer issued his Decision on January 12, 2026, denying the parents all of their requested relief.

64.    The Hearing Officer incorrectly found that DCPS did not deny S.A. a FAPE with its proposed IEPs and placements for the 2024-25 and 2025-26 school years.

65.    The Hearing Officer improperly dismissed the opinions of the plaintiffs' experts and instead relied upon defendant's witnesses.

66.    The Hearing Officer erroneously concluded that S.A. was with the full student body at Lab School during lunch and recess and improperly relied upon this incorrect fact in reaching his conclusions.

67.    The Hearing Officer improperly concluded that S.A. did not require special education services throughout the school day, improperly relying upon Lab School teacher certification information in making that conclusion.

15

68.     The Hearing Officer incorrectly concluded that the school system refuted petitioners' concerns about the proposed DCPS placements at Murch and Deal.

69.     The Hearing Officer incorrectly concluded that S.A. demonstrated extreme behavioral concerns at Lab School and that some of these behavioral concerns were because S.A. wanted to return to his DCPS school.

70.     The Hearing Officer improperly concluded that Lab School is not an appropriate placement for S.A.

71.     The Hearing Officer misstated the evidence.

72.     The Hearing Officer's Decision contains multiple errors of fact and law.

73.     Many of the Hearing Officer's findings of fact are not regularly made.

74.     The Hearing Officer applied incorrect legal standards in reaching his Decision.

75.     The parents are aggrieved by the Hearing Officer's Decision.

76.     The parents have exhausted their administrative remedies.

## COUNT I

(Failure to provide a Free Appropriate Public Education)

77.     Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 76.

78.     Defendant's failure to provide S.A. with a Free Appropriate Public Education violates plaintiffs' rights under the IDEA and District of Columbia law.

## COUNT II

(Failure to Offer Appropriate Program and Placement)

79.     Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 76.

80.     The failure of the Hearing Officer to order defendant to place and fund S.A. in an appropriate program and placement violates the IDEA and District of Columbia law.

## COUNT III

(Failure of the Hearing Officer to Render a Proper Decision)

81.     Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 76.

82.     The Hearing Officer committed error and violated plaintiffs' due process rights under the IDEA and District of Columbia law by failing to render a proper decision based on an accurate and impartial understanding of the facts.

83.     The Hearing Officer committed error and violated the plaintiffs' due process rights under the IDEA and District of Columbia law by failing to apply correct legal standards.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request that this Court:

1.     Issue judgment for plaintiffs and against defendant;

2.     Issue declaratory relief that defendant violated plaintiffs' rights under applicable law;

3.     Order defendant to reimburse the tuition and related services paid to Lab School for the 2024-25 and 2025-26 school years and declare it to be his current educational placement under the IDEA;

4.     Order defendant to pay plaintiffs' reasonable attorneys' fees and costs, including the fees and costs of this action; and

5.     Award any other relief that this Court deems just.


Respectfully Submitted,

_____/s/  Michael J. Eig_____

Michael J. Eig                    #912733

17

Paula A. Rosenstock      #494580
Matthew B. Bogin      #911552
Meghan M. Probert      #1004929

MICHAEL J. EIG AND ASSOCIATES, P.C.
5454 Wisconsin Avenue
Suite 760
Chevy Chase, Maryland 20815
(301) 657-1740

*Counsel for Plaintiffs*